We have one arguing case before this panel this morning, which is No. 06-1562, Egyption Goddess v. Swisa Inc. We have two submitted cases, No. 06-1439, Zeal v. Fastmobile, and No. 06-3416, Ian Demay v. Defense. And once we finish with the argument in Egyption Goddess, then the court will recess, and then a different panel will hear the motion's key word case thereafter. So, Mr. Hope, are you ready? Yes, Your Honor. May I proceed? Yes, please. May it please the court. Good morning, Your Honors. My name is Robert Hope, and I represent Egyption Goddess in this appeal. This is a design-patent case involving nail buffers, and it is an appeal from a grant of summary judgment of non-infringement on the point-of-novelty test. The district court found that the patented design had a single point of novelty, a fourth side without a pad. The district court determined the point of novelty by comparing the patented design not against the relevant prior art designs, but rather by selecting a single piece of prior art and then making the comparison. The district court then determined that since the accused buffer did not have a fourth side without a pad, that there was no infringement as a matter of law. The district court committed error for three reasons. First, according to this court, points of novelty are determined by comparing the patented design. Mr. Hope, just to be clear, you're not now challenging that aspect of the district court's hold. You're saying the error here laid in failing to recognize that a combination of the four elements from the prior art was itself a point of novelty. Yes, Your Honor, we're challenging the selection of the point of novelty by the district court. You're saying it's a different point of novelty than a combination? Yes, Your Honor. Yes. This court states that points of novelty are selected by reviewing the entire prior art and not by simply selecting a single piece of prior art, particularly when there are other pieces of prior art that are relevant to the comparison. Second, points of novelty are classified. If these separate points of novelty that you contend are in the other prior art that wasn't considered by the district court Why do we have to go back and look at the other? Well, I would argue that there is no particular piece of prior art that can be considered to be the closest prior art. Certainly not the piece of prior art selected by the district court because that basic geometric shape is a triangle and the patented design is a square. And so you can take different pieces of prior art and by making the comparison against the different design elements you can say, well, this piece of prior art is closest on this point and this piece of prior art is closest on another point. In this particular case, and it's on a case-by-case basis, but in this particular case you do have to look at all the design elements or all the prior art designs in order to select the proper combination of design elements that constitute the point of novelty of the prior art. We were talking about an obviousness analysis here and as you say all the features were in the prior art and we're dealing with the same device, a veil buffer. Why isn't there a suggestion to combine those elements in the prior art into a new combination? Now, I didn't quite catch the first part of your question, but did you say if we were... If we were doing an obviousness analysis here and each of these design elements was in the prior art and we're dealing with an art in which it's the same device basically rather than something unrelated, why isn't there sort of an automatic suggestion to combine those features from the prior art into this new combination? In an obviousness analysis, this court states that there's a process that you go to that you need to design patterns and the first thing you have to do is select a primary reference that is basically the same as the patented design. You don't have that in this case because there's not another design in the prior art that's basically the same as the patented design. Certainly the Elko patent is not because it's triangular in shape rather than square in shape and so you don't even get to... and suggestions to combine references. Also in the obviousness analysis, there are secondary considerations that would weigh against obviousness. What authority holds that you can't have obviousness in the design patent context by combining several different references without designating one of them as a primary reference? I don't have the case site in my mind. They're in the briefs that the way that you do that is primary reference and secondary reference in the design patent case. Counsel, our cases, long and included, have clearly allowed for the possibility of a combination of old elements to, in combination, create a point of novelty. But I'll tell you, I'm not persuaded that you ought to be able to just pick any old elements and you ought to necessarily be able to just target it to the ones that happen to be in the accused device. Why these four? Why not a fourth one? Why not instead of the pads not covering the corners of the two, which doesn't look so important to me, why not the fourth one be there's a fourth side with no abrasion? Obviously I know why because then you wouldn't have infringement.  My concern is allowing you to just randomly pick any combination of elements that just happen to be present in the accused device. I'm concerned about this shopping list approach. And I was going to say what the court is referring to is the shopping list approach. And in the shopping list approach, what a plaintiff does is looks at the prior art and then also looks at the accused device and comes up with a point of novelty by making sure that it's in the accused device as well. That is not permissible. And that is not what we are doing. What we are doing is selecting points of novelty by only comparing the patented design against the prior art. The accused device is not a part of that. Counselor, you don't select points of novelty, right? You're not saying open and hollow is a point of novelty. You're saying these four things taken together represent a point of novelty, a combination is a point of novelty. Because you said we're not, we selected points of novelty. You misspoke, right? Well, yeah. Because you're not suggesting each one of these individual things is its own point of novelty. No. All of the individual, I didn't misspeak. All of the individual elements are already in the prior art. And it is the novel combination of these design elements that constitutes the point of novelty. Now, in this case, we are not simply selecting the design elements that are contained in the accused buffer. Again, that is not permissible. Coincidence? Well, first of all, points of novelty, that's a question of fact for the jury. We understand that SWISA may have a different argument on what the point of novelty is. But that's a question of fact for the jury, for the jury to determine. And then, you know, the controversy here is whether the point of novelty must be limited to three buffer paths, or whether it can be expressed in terms of multiple buffer paths. And I understand that's a factual argument on the point of novelty test. But even if you express the point of novelty in terms of open and hollow tube, square and cross section, rectangular in length, with three raised buffer paths as the point of novelty, and that would probably be SWISA's point of novelty argument, that... I'm guessing they're not going to tell me that's their point of novelty. I'm going to guess, I'm going to say the whole thing's obvious. And they're not going to concede any point of novelty, but we'll see when they get up here. I'm presuming it gets reversed and remanded to the trial court, and we're arguing factually over what the point of novelty is at that point. How do we determine when a combination is a point of novelty and when it isn't? What's the line? How do we draw the line? Well, you have to do it by looking at the prior art. And this court has said that the points of novelty are determined by comparing the patent to be signed against the prior art. Now, I know that... That's clear enough. And we've said in law, man, that the differences have to be significant. But how do we determine whether combining features from the prior art results in a significant point of novelty or it doesn't? What's the test? Well, first of all, the points of novelty, again, this court has said that that is a question of fact for the jury. And so on review, you'll be reviewing whether the... Well, how do you charge the jury? What do you tell the jury is the test for determining what the point of novelty is? I think what you would do is express the rules of law as laid down by this court, that it is the differences in the patent to design with the prior art. And it can be a combination of design elements. Now, the problem that has occurred is what if it's the entire design? Some members of this court have expressed, well, that collapses the point of novelty test into the entire design. It doesn't matter as long as you are determining the points of novelty by comparing the patent to design against the prior art. Now, let me say that there will be a natural... for the court to instruct the jury as to what's a significant combination that's a point of novelty and when a combination isn't a point of novelty. Well, you know, drawing the line between what is a significant point of novelty and what is not, that's a difficult thing to express. But I think that a jury would be capable of making a decision by comparing the patent to design against the prior art. And let me say that there is a natural inclination by a patentee to select the smallest possible novel combination. The smallest possible novel combination because the larger the combination that is selected, the harder it is to prove infringement and the easier it is to avoid infringement. And so... Counsel, would you acknowledge then, though, that just because a combination has elements that taken together and not present in the prior art, so just because there isn't pure anticipation that, you know, there are completely insignificant design aspects that most people would not even notice and say that's the combination. And it is true that those four are not present in any particular one prior art reference. Would you acknowledge that maybe that not ought to be the end of the inquiry, that maybe there's some onus on the patentee to choose a point of novelty that is substantial, that really these four elements taken together give a fact finder a different visual impression from the prior art or something that maybe there is something more. This is not necessarily just a purely anticipation test. I mean, certainly the case law that suggests that Goodyear, they looked at the obviousness of the three combinations, right? The microwave latch, the three stripes, the button on the door, I don't remember what the third one was. And the court came to that combination because they said this combination of three things taken together actually said is not obvious in light of the prior art. And that was in the point of novelty analysis. It wasn't significant to the court that those three taken together just didn't happen to appear in a single reference, but rather that they really were something different to an ordinary observer than the prior art. Well, but I think the important, I think we have to go back to why do we have a point of novelty test? I mean, it's an adjunct to the ordinary observer. And the first thing you ask on the ordinary observer is do the entire, both full designs, the patented design and the entire accused design, do they look similar to pass the ordinary observer test? If the answer to that is yes, then you say, why do they look similar? And they have to look similar because of the points of novelty that distinguish it from the prior art. Counsel, this is going to be a little bit off from your brief. And so I hope that you'll give me just a little bit of leeway. But you said, you know, you have to first ask why do we have a point of novelty test, and Judge Dyke and I both sort of laughed. You know, as I was reading this and really educating myself about it, I really discovered that I could find almost no Supreme Court precedent that ever mentions anything about a point of novelty test. And in fact, to the extent that there's anything at all, it seems to all come before the 1952 Patent Act, which eliminated the heart of the invention or the gist of the invention test from patent law with regard to obviousness. And this seems to me to be something that sort of is akin to that. What are your thoughts? Do you think that there is a legitimate basis for a point of novelty test in design patent law, either in statute or some fundamental policy that may be a reason we ought to have such a thing? I realize I'm limited. I have to follow precedent, and I will do so. But I'm just curious about your thought on that. Well, I think just from a fundamental, and I guess you could express it as policy or fairness point of view, that if you are comparing a claimed design against an accused design, and the reason they look so similar is because of design aspects that were already in the prior art. And are not a part of the novelty that allowed the patentee to get the design patent. I don't think that should be a basis for infringement. The problem is it seems to sort of overlap with the obviousness test. Well, all I can argue for is this court's case law. And this court has said that in an obviousness test, you go through the process of primary references, secondary references. And in the obviousness test, what you're trying to determine is whether the patent is novel over the prior art. And in the point of novelty test, you're trying to determine whether the substantial similarities that an ordinary observer would look at come from the points of novelty that allows you to get the patent in the first place. So I think there is a distinction. Thank you. Thank you. We'll restore her at all times. Okay. I just want to wait. Is that for my 10 minutes or for my 15? Yes. You'll have five minutes. Okay. Mr. Medlin. I will give you another few minutes if you need to. Thank you, Your Honor. May it please the court. My name is Frederick Medlin. I'm with the law firm of Kirkpatrick and Lockhart, Preston Gates Ellis. I represent appellees for SWISA and SWISAE. As Judge Moore anticipated, we do indeed claim this app is entirely obvious. The district court below graded the summary judgment. Do we have to have a primary reference or can we just combine several references without identifying one as a primary reference? Well, Your Honor, we do need a primary reference, but here there is a clear primary reference. Mr. Oakwood so far has said that the nail coat buffer is the closest prior art. There can't be any legitimate question that the nail coat buffer is the closest prior art. Really? Because, you know, look, I looked at the – and I tell you, these pictures were wonderfully helpful, so thank you. But just the square versus triangular to me seemed like such a different visual impression, such a difference. I mean, it was – to me, I look at all of these, and I think every one of them is more similar to the 389 except for the nail coat. Well – Because the most significant visual impression point is clearly the overall shape of the product, and all the others share the same shape, and this one doesn't. So as a matter of fact, which is what this is, I have a little bit of trouble coming to the conclusion that this is the most similar one. Well, either the Thali buffer block or the nail coat buffer could serve as a primary reference. There's a reason all of those are so similar. It's undisputed back in 1987, a gentleman named Michael Thali invented these buffers, three-way and four-way buffer blocks, and hence the Thali buffer block. His purpose in inventing these was to mount three or four different abrasive surfaces so each would be on its own separate long side. After he invented this shape, and really for the four-way buffer block in particular, that's the only game in town, because you can't have more than four sides because you'd have superfluous or repetitive sides, and it would be confusing. You can't have less than four sides without defeating the purpose of a separate abrasive on each side. Once he invented these, numerous other companies, both abroad and in the United States, imitated them, and Michael Thali's own company really had sold one and a half million of these already by the time I wrote that brief. The nail coat buffer that we're talking about here, which was also manufactured by Michael Thali's company, released for nail coat, for sale to Adi Torquilla, was essentially just a hollow version of the Thali buffer. Yeah, but that's not really responding to the question. The question is, why isn't the nail coat buffer sufficiently different so it can't serve as a primary? Well, if the nail coat buffer had a square in, it would be the Swissa buffer, the 389 design. All Adi Torquilla did in creating this 389 design was to take the nail coat buffer, with every single feature of it, and return it to the shape of the Thali buffer block, which is really about the only functional shape you can have for a four-way buffer, such as the Swissa buffer. If it couldn't be more similar... Why couldn't it be rectangular? Well, because, and as Michael Thali explains in his declarations that are in our joint appendix, about starting at page 816, the reason it can't be rectangular is then you would have different size areas for the different abrasive surfaces. Only by having an equilateral triangle or a square at the end do you have these equal pads on both sides. This also makes it much easier to produce and cheaper to manufacture, which gets to the functional nature of this whole shape. You know, below this was decided just on the point of knowledge. I don't know if that saved the functionality question, but it worked. On the point of novelty, they say it's a combination of old elements. They admit that. How do we determine whether a combination is a good point of novelty or it isn't? Because the lawman seems to say that the point of novelty has to be something significant. How do we determine whether a point of novelty is significant or not? You want us to rule as a matter of law. I take it that the point of novelty here is not significant, rather than ascendant to the jury. How do we determine? How does the judgment, summary judgment, determine whether a combination of old elements is not a point of novelty? Well, in this particular case, there's only one added element from this piece of prior art, the nalco buffer. Here, the combination can't be some combination that already existed in the nalco buffer. I think the panel's decision in Sunhill Industries v. O'Sullivan Industries is the proper way to proceed here in that case. You're really not answering my question. My question is, let's assume hypothetically, maybe you think this isn't a case like that, that there's a combination of old elements that's identified as a point of novelty. And the lawman case addressed that and said, in appropriate circumstances, a combination can be a separate point of novelty. Assuming that we decide here that there is a combination of old elements, and the question is whether that's a point of novelty, what's the test as to whether it is a point of novelty or not? Well, I would think, how I read in appropriate circumstances, in the lawman denial of petition for a brief hearing that I believe Your Honor participated in, I assumed that that meant in circumstances where the combination point of novelty would be differences, a combination of elements, that the old elements were new in that work, but were not part of some very closely related prior arc like the nalco buffer is here. But counsel, the combination they're suggesting isn't within the nalco buffer because one of the form elements is square. The nalco buffer is triangular. That is the biggest visual difference between these two products. So they have not chosen a combination wherein each of the elements of the combination is present in a single prior arc reference. And why is that not a question? In fact, they've chosen a combination, and you've made no showing that that combination is present in any single reference. So why isn't that a question of fact that goes to the jury? Well, because all the only elements that they've added, there's the addition of the fourth side that leads to the square ends. That fourth side can't be treated as just a fourth side. It's either a fourth side with an abrasive surface or a fourth side without an abrasive surface. As the district court explicitly recognized below, in the context of nalco buffers, there's a huge difference between a fourth side with an abrasive and a fourth side without. So maybe what you're suggesting then, counsel, and tell me if I'm wrong, is that the combination has to include all the things that are significant or important that distinguish this from the prior arc. So when we were talking to the previous litigant about what test can we use to see it, because clearly a combination can be something that can be a point of novelty. What test should we use? Well, maybe the test should be that each of the elements has to be, the combination has to encapsulate all the significant aspects of the design or something like that. Because we certainly don't want to go with this shopping list idea. I don't want to let anybody just pick the random insignificant aspects, put them together and say, oh, not anticipated by any single piece of prior art, and they're all presently accused of vice, end of story. I don't think that that would be a good policy or a good legal standard to adapt. So we're trying to figure out, so what should be the test that we tell people? Well, I would think that if the only difference between a single piece of prior art and the patented issue is a combination point of novelty of several points, every one of those points would have to be incorporated in the accused's device in order to satisfy the point of novelty test. Otherwise, you would have no clarity as to when the point of novelty test had been satisfied. If these patents are limited to their precise drawings, they have almost no scope. Accountably, you're not answering my question, though, because they've chosen four points. Why aren't these four points a point of novelty? They're all present in your accused's device. These four points are not present in any piece of prior art, any single piece of prior art. Why isn't that a question of fact that goes to the jury? Well, in order to pick that combination, though, they're having to leave out an aspect of one of the features. They're talking about a fourth side, and they're ignoring whether it's a fourth side with or without an abrasive surface on it. And those two are not the same in the context of nail practice. Well, are you agreeing, then, that where the point of novelty is a combination, that you have to take all significant features that are in the patented device to determine what the combination is? I would agree with that, yes. But I would think, again, that here they're leaving out a feature. Well, yes, they're leaving. They're characterizing a fourth side as just a fourth side, rather than a fourth side with or without an abrasive surface on it, which makes a tremendous difference in this context. What they're really doing is arguing that everything, all of their elements are their combination. The point of novelty, while leaving out this vital aspect of the absence of an abrasive surface on the fourth side. It seems that if they left out a vital aspect, though, isn't that, I mean, this whole thing's a question of fact. So if your contention is that they didn't choose the right combination, then how can we say, as a matter of law, I guess what you're saying is they left out a vital aspect, and we've got a rule as a matter of law, this can't be the combination? Well, yes, the district court below, I think, properly defined the feature that was the only possible point of novelty here, and it was this addition of a fourth side without an abrasive surface. I would also urge the court to consider the other three alternative grounds to support this summary judgment. The district court below did not reach them, and Egyptian goddess closes its eyes to them in its briefing, attempting to incorporate by reference its arguments with the district court. And those three grounds are functionality, obviousness, and, of course, the third one. The ordinary observer test, this is a, in all three of these grounds, this case, because of the exceeding simplicity of the design at issue here, the close relationships between these designs, this provides a very clear example of various principles of design, path, and wall. With regard to obviousness, we strongly feel this was obvious. Whether you take the valley buffer block or you take the nail code buffer as the primary reference, either way, all this gentleman, Adi Torkia, was doing was turning the nail code buffer to the square configuration of the valley buffer block. How do we determine whether this is a suggestion of a combined reference to some of the obviousness tests? Well, here it's very easy because there have been all of these block-shaped, three-way, four-way buffers all along. What's the suggestion in a design pattern to combine? We're not talking about cost. We're not talking about efficiency. We're not talking about functional elements. How do we determine whether this is a suggestion to combine the old elements? Well, I think this is an unusually clear example that if you're out there selling a three-way buffer that's got triangular ends and all the other three-way, four-way buffer blocks out there are four-sided, it's pretty obvious that, oh, I can just add an additional side to this hollow frame and take it back to the shape. So it's obvious if it's there in the prior art automatically. Well, it's there in articles being used for the exact same purpose as the article you're selling. We also think with regard, just touching briefly on the ordinary observer test, the fact is this is a design for a three-way buffer. The 389 patent is. And the SWISA buffer is a four-way buffer. An ordinary observer is not going to confuse a three-way buffer and a four-way buffer. And the advertising of all these buffers establishes that. The appendix is full of examples of people selling these products. They always identify them as a three-way or a four-way buffer. It defies common sense to think that somebody buying a buffer for a multi-step buffing process is going to be oblivious to the number of steps it will perform. And SWISA's own advertising stresses the fact that it's a four-way buffer. But more importantly, Egyptian goddess in its advertising stresses the fact that it's a three-way buffer. Excuse me. And SWISA stresses that it's a four-way buffer. Files. Well, on the functionality ground, Your Honor, as I was mentioning earlier, the very purpose of these buffers, you need four long sides for a four-way buffer. When we argued this to the district court below, Egyptian goddess persuaded the district court that in order for this block shape to be the functional for a nail buffer, a four-way nail was the only possible shape that would work, the only conceivable shape that would work. And the district court's opinion reflected that. We argued that a different standard applied. We cited from a United States Supreme Court case, a mini-innovations fee, Alfred, California. I'm sorry, from a Supreme Court case, Inwood Laboratories v. Ives Laboratories, where the court said, well, a product feature is functional. It is absolutely necessary for the use or purpose of the article, essential for the use or purpose of the article, or if it affects cost or quality. Now, that was in the trademark context. But subsequently, a panel of this court that included Your Honor Judge Dyke in a mini-innovations fee, Alfred, California, took that very language from Inwood Laboratories. If you take that standard as the standard for feature functionality, and we would submit no other standard makes any sense, it can't be said that four-sidedness itself is not a functional feature in the context of a four-way nail buffer. And square ends is not a functional feature in the context of four-way nail buffers. Therefore, in the infringement analysis, these two elements, four-sidedness and square ends, would have to be eliminated. Once you eliminated four-sidedness and square ends, there's simply nothing in the SWISA buffer that could even possibly infringe, because all the other elements of the 389 patent are taken from the Nail Code patent. Thank you. May it please the Court. First, with regard to the three points that were raised as alternative means, I briefly addressed those in the reply brief. I would question whether the fairly before the Court, the District Court, did not render a final decision on the ordinary observer test or on... Yeah, but they emerged at the ground. It's based on the record for affirmance other than the one that the District Court decided. I would agree with that on... It may not be desirable, maybe, that we shouldn't reach it, but we can if we want to. I would agree with that in looking at this Court's panel opinions. If you're supporting the judgment on the point of novelty test, however, a panel of this Court has said that when a judge does not make a final decision on a different issue like invalidity, then it's not properly before the Court. Excuse me. Oh, excuse me, Your Honor. Excuse me. Let me address that briefly. First of all, on the obviousness test, the site that I have in my brief is Durling v. Spectrum Furniture on the primary and the secondary analysis, and that site's in Ray Rosen. In this case, Your Honor asked what is the suggestion to combine references. The test is once you have a primary reference that has basically the same design consideration, then, the quote is, then you have to find secondary considerations, and the secondary references, not considerations, secondary references, may only be used to modify the primary reference if they are, quote, so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other. So in this case, we don't have a primary reference. We don't have a primary, so we can't have secondaries that are so close to the primary to suggest the combination. In any event, I believe that there are questions of fact. On the ordinary observer test... Counsel, you have very little time left. Do you mind if I bring in the point of novelty test? It's not at all. Okay, thanks. The one thing that has been concerning me is that Kelly brought up the idea that you left out a vital aspect of the design with regard to the combination, namely the absence of abrasiveness on the fourth side, and you redefined that element. You didn't just... Square isn't enough. It has to be square without abrasion on the fourth side. What do you think about that? How would you respond to that? First of all, a little technical point. I would disagree with using the term abrasion because that's a functional. It's not that you don't get by looking at the patent. But if you... I think you're talking about a pad. I've left off a fourth pad. Again, that's a question of fact. We believe that since there was not in the prior art an open and hollow buffer, square and cross-section, rectangular in length, with four raised buffer pads, it's not necessarily to exactly identify the combination point of novelty as having three buffer pads. Now, I understand that there's counter-arguments to that. And, you know, ultimately, I would argue against it, but ultimately the point of novelty may be determined to be the open and hollow, square and cross-section, or rectangular in length  as the point of novelty over the prior art. In that event, I would be arguing that the point of novelty is substantially appropriated by the accused buffer because the dominant design characteristics of the open and hollow tube, square and cross-section, rectangular in length, with the raised buffer pads are so similar in the two that the addition of just one buffer pad is not a significant change in the overall design. So we would argue that it would substantially appropriate the points of novelty. If I could finish, Your Honor, by, well, let me say one thing on claim construction. We are not arguing that the patented design appropriates all square, all four-sided square buffers. We are just saying that it covers the particular ornamental aspect of this particular design because a four-sided square can be solid. It need not have raised buffers. In fact, many, as we've said, many millions were sold out there. We're not appropriating that underlying functional aspect of the design, just the particular ornamentation. Final point, if I could. Your Honors have asked repeatedly, what do we think the test should be on point of novelty? We're both struggling with that. Both counsel are struggling with that. The reason I am is because the way I've looked at this is that it's not a rule of law. It is a question of fact for the jury on what the point of novelty is. And as long as that point of novelty selected is found nowhere in the prior art, then that's an option for the jury to choose. And if the jury chooses it and it comes up on appeal, then it's reviewed under the substantial evidence test. And as long as this court can say that a reasonable jury could choose that in light of, you know, you cannot choose a combination that is obviously in the prior art, but as long as it passes all the underlying legal tests, the choice is for the jury because this court has said that it is a question of fact for the jury. Thank you, Your Honors. Excuse me.